Neal ADAMS, Plaintiff,

v.

Bill FRANKLIN, et al., Defendants.

No. Civ.A. 99–D–815–N.

United States District Court,
M.D. Alabama,
Northern Division.

July 31, 2000.

Thomas J. Azar, Jr., Azar & Tasheiko, LLC, Montgomery, AL, for plaintiff.

Daryl L. Masters, Webb & Eley, P.C., Montgomery, AL, for defendants.

### MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is Defendants Bill Franklin, Garry Bowers, Morris Rogers and Phillip Estes' (collectively "Defendants") Motion To Dismiss Plaintiff's Second Amended Complaint ("Mot."), filed January 19, 2000. Plaintiff Neal Adams ("Plaintiff") filed a Response ("Resp.") on February 4, 2000. After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that Defendants' Motion is due to be granted in part and denied in part.

## I. JURISDICTION AND VENUE

The court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1343 (civil rights jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction). The Parties do not contest personal jurisdiction or venue.

## II. STANDARD OF REVIEW

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint because the plaintiff has failed to state a claim upon which relief may be granted. *See* FED. R.CIV.P. 12(b)(6). A Rule 12(b)(6) motion questions the legal sufficiency of a complaint; therefore, in assessing the merits of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true. *See, e.g., United States v. Gaubert,* 499 U.S. 315, 327, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); *Powell v. Lennon,* 914 F.2d 1459, 1463 (11th Cir.1990). Moreover, all factual

allegations are to be construed in the light most favorable to the plaintiff. *See, e.g., Brower v. County of Inyo,* 489 U.S. 593, 598, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989).

Generally, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *In re Johannessen,* 76 F.3d 347, 349 (11th Cir.1996) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). However, in § 1983 actions where government officials sued in their individual capacities have raised the defense of qualified immunity, the Eleventh Circuit has "tightened" the pleading requirements. *GJR Investments, Inc. v. County of Escambia, Fla.,* 132 F.3d 1359, 1367 (11th Cir.1998). In *Oladeinde v. City of Birmingham,* the Eleventh Circuit held that in cases where qualified immunity is implicated, "some factual detail is necessary, especially if [the court is] to be able to see that the allegedly violated right was clearly established when the allegedly wrongful acts occurred." 963 F.2d 1481, 1485 (11th Cir.1992). Accordingly, in determining whether a plaintiff has stated a § 1983 claim against a defendant in his or her individual capacity, courts must be "guided both by the regular 12(b)(6) standard and by the heightened pleading requirement." *GJR Investments,* 132 F.3d at 1367.

## III. PROCEDURAL HISTORY AND FACTUAL BACKGROUND[1]

On August 5, 1999, Plaintiff filed a *pro se* Complaint, alleging violations of his constitutional rights, as enforced by § 1983, and asserting several state-law causes of action. On October 18, 1999, Plaintiff filed an Amendment To Complaint to add a demand for a jury trial and a request for punitive damages. Thereafter, Plaintiff retained counsel, and on January 10, 2000, the court granted counsel for Plaintiff leave to file a Second Amended Complaint.

In his Second Amended Complaint, Plaintiff brings claims against the following Defendants: (1) Bill Franklin ("Franklin"), Sheriff of Elmore County, Alabama; (2) Deputy Sheriff Morris Rogers ("Rogers"); (3) Deputy Sheriff Phillip Estes ("Estes"); (4) Deputy Sheriff Garry Bowers ("Bowers"), the jail administrator[2]; (5) a fictitious party whom Plaintiff identifies as "Dr. Feelgood"[3]; and (6) the Elmore County Sheriff's Department.[4] (2nd Am. Compl.¶ 2.) Plaintiff alleges as follows:

> At approximately 10 p.m. on Friday August 8, 1997[,] I was arrested and literally thrown in the backseat of the Elmore County Sheriff's Department's car driven by Deputy Sheriff Morris L. Rogers.

1. For purposes of considering Defendants' Motion, the court presumes that the allegations in Plaintiff's Second Amended Complaint are true. *See Gaubert,* 499 U.S. at 327, 111 S.Ct. 1267.

2. In his pleadings, Plaintiff has not identified the jail administrator by name. However, in their Motion To Dismiss, Defendants recognize the jail administrator as being Bowers, who has joined in Defendants' Motion. (Mot. at 1.) Thus, the court will refer to this Defendants as "Bowers."

3. The court will not address Plaintiff's claims against "Dr. Feelgood" because fictitious party practice is not authorized by either the Federal Rules of Civil Procedure or any federal statute. *See New v. Sports & Recreation, Inc.,* 114 F.3d 1092, 1094 n. 1 (11th Cir. 1997).

4. In Count 2, Plaintiff names the Elmore County Sheriff's Department as the sole Defendant against which he brings a state-law cause of action for negligent training and supervision. (2nd Am.Compl.¶ 8.) Count 2 is the only count in which the Elmore County Sheriff's Department is named as a Defendant. Because the Defendants who filed the instant Motion are not named in Count 2, the court expresses no opinion as to the merits of said count. Likewise, the court expresses no opinion as to whether the Elmore County Sheriff's Department has been properly named and served as a Defendant in this action. The court merely notes that Plaintiff has not named the Elmore County Sheriff's Department as a Defendant in the caption of any of his Complaints, nor is the Elmore County Sheriff's Department listed as Defendant in the section of Plaintiff's Second Amended Complaint, titled "Statement of Parties." (*Id.*)

I was taken to the Elmore County Jail. I was placed in a room with a black man lying on the floor. I asked four or five times to make a phone call and was denied. I then asked them to call my doctor because I was having chest pains and shortness of breath. This continued for about two hours with my being denied the request each time. The Deputies told me each time that I just needed another beer. As I continued to beg them to call my doctor as my situation was getting worse. They opened the door, and a heavyset young man in a red T-shirt was introduced as Dr. Feelgood. He put a stethoscope on top of my left shoulder and then on top of my right shoulder and told me there was nothing wrong with me, that I just needed another beer. All deputies in the jail just laughed and joked about my situation. The black man in the room with me asked them several times to get me a doctor. The deputies all continued to laugh and joke. Then Deputy Sheriff Phillip Estes cam[e] into the room and put handcuffs on me, grabbed me by the throat, and slammed me against the wall two times, removed the handcuffs, hit me with his fist in the stomach, and told me if I said another word he would handcuff me to the grate in the middle of the floor where you urinate. Each time they laughed. After the black man in the room with me begged them several more times they call my doctor and he told them to get me to the Baptist Hospital in Montgomery as soon as possible. Haynes Ambulance arrived and took me to the Baptist Hospital where I spent two days in intensive care. I could have died in the Elmore County jail the night of August 8, 1997 because of the stupid Elmore County deputies.

(*Id.* ¶ 3.)

Plaintiff's Second Amended Complaint contains six counts against Defendants—

two federal causes of action and four state-law claims. Counts 1 and 7 allege federal causes of action pursuant to § 1983 against Franklin, Bowers, Rogers and Estes. In Count 1, Plaintiff alleges that these Defendants violated his Fourth and Fourteenth Amendment rights, as enforced by § 1983, "by unlawfully detaining him in the jail, and denying him necessary medical attention under color of law." (*Id.* ¶ 6.) In Count 7, Plaintiff restates that Franklin, Bowers, Rogers and Estes, acting under color of law, "violated his civil rights pursuant to [ ] § 1983 by unlawfully detaining him in the Elmore County Jail, and denying him necessary treatment and care." (*Id.* ¶ 19.)

Counts 3–6 set forth state-law claims against Franklin, Bowers, Rogers and Estes for assault and battery (Count 3), negligence (Count 4), intentional infliction of emotional distress (Count 5), and outrage (Count 6).[5] (*Id.* ¶¶ 11, 13, 15, 17.) Plaintiff requests compensatory damages and punitive damages, "plus interest and cost of court," as well as attorney's fees. (*Id.* at 3–5.) Further, Plaintiff demands a trial by jury. (*Id.* at 2.)

## IV. DISCUSSION

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants challenge the legal sufficiency of each count in Plaintiff's Second Amended Complaint in which they are named. The court will address separately each argument raised by Defendants, as those arguments relate, first, to Plaintiff's federal causes of action (Counts 1 and 7) and, second, to Plaintiff's state-law claims (Counts 3–6).

### A. *Plaintiff's Federal Causes Of Action (Counts 1 and 7)*

■ In Counts 1 and 7, Plaintiff brings constitutional claims under the Fourth and

---

5. As stated previously, in Count 2, Plaintiff contends that the Elmore County Sheriff's Department "negligently trained" Rogers and Estes "in the proper procedure for apprehension and arrest of persons suspected of com-

mitting criminal acts." (*Id.* ¶ 8.) Because the movants (i.e., Franklin, Bowers, Rogers and Estes) are not named as Defendants in Count 2, the viability of this claim is not before the court.

Fourteenth amendments, as enforced by § 1983,[6] against Franklin, Bowers, Rogers and Estes. (2nd Am.Compl.¶¶ 6, 19.) Specifically, Plaintiff asserts that Defendants violated his Fourth and Fourteenth amendments rights "by unlawfully detaining him in the jail, and denying him necessary medical attention under color of law." (*Id.*) In moving for dismissal of Counts 1 and 7, Defendants raise the following three grounds. First, because Plaintiff's Second Amended Complaint is ambiguous as to which capacity Plaintiff is suing Defendants, Defendants argue that the court should construe Plaintiff's § 1983 action as alleging only official-capacity claims, not individual-capacity claims. (Mot.¶ 2.) Second, Defendants assert that Plaintiff's § 1983 claims against them in their official capacities are due to be dismissed based on the Eleventh Amendment and because they are not "persons" within the meaning of § 1983. (*Id.* ¶ 4.) Third, should the court treat Plaintiff's § 1983 claims as alleging both individual- and official-capacity claims, Defendants assert that they are immune from damages under the well-established doctrine of qualified immunity. (*Id.* ¶ 7.) The court will address each argument in turn.

### 1. Ascertaining The Capacity In Which Defendants Are Sued

As stated, Defendants point out that Plaintiff's Second Amended Complaint is "silent" as to whether Defendants are sued in their individual capacities, official capacities, or both. (Mot.¶ 2.) Defendants urge the court to construe Plaintiff's Second Amended Complaint as alleging only official-capacity claims.[7] Defendants reason that, because the alleged acts and/or omissions transpired as a result of their work as state officials, said acts and/or omissions "could only have occurred while they were acting in their official capacities." (*Id.*) Plaintiff, on the other hand, states that, despite a specific designation in his Second Amended Complaint, he is seeking relief from Defendants in both their individual and official capacities. (Resp. at 1–2.) Further, Plaintiff notes that, in a prior pleading, he "specifically ask[ed] that this Honorable Court continue said Defendants in this action in both their official capacity and individual capacity." (*Id.* at 2.) For the following reasons, the court will allow Plaintiff to proceed against Defendants in their individual, as well as official, capacities.

"Plaintiffs are not usually required to designate, with particular words in the pleadings, that they bring their action against defendants in the defendants' individual or official capacities, or both." *Hobbs v. Roberts*, 999 F.2d 1526, 1529–30 (11th Cir.1993). However, "[i]n general," plaintiffs have a "duty to make plain who they are suing and to do so well before trial." *Colvin v. McDougall*, 62 F.3d 1316, 1318 (11th Cir.1995). Thus, "[i]t is obviously preferable for the plaintiff to be spe-

---

**6.** Section 1983 "is not itself a source of substantive rights," rather it provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979).

**7.** The court notes that whether Defendants are sued in their official or individual capacities is material because the defenses available "vary according to the capacity in which they are sued." *Jackson v. Georgia Dept. of Transp.*, 16 F.3d 1573, 1576 (11th Cir.1994). Specifically, as discussed below, the Eleventh Amendment is a defense to a § 1983 claim against a government official sued in his or her official capacity. However, a government official "is not entitled to assert the absolute immunity of the Eleventh Amendment as a defense" in a § 1983 individual-capacity action. *Parker v. Williams*, 862 F.2d 1471, 1476 (11th Cir.1989), overruled on other grounds, *Turquitt v. Jefferson County, Ala.*, 137 F.3d 1285 (11th Cir.1998). As to individual-capacity claims under § 1983, a government official must raise the affirmative defense of qualified immunity. *See Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1184 n. 16 (11th Cir.1994) ("It is well-settled that qualified immunity only protects public official from lawsuits brought against them in their individual capacity.").

cific in the first instance to avoid any ambiguity." *Hafer v. Melo,* 502 U.S. 21, 24 n. *, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) (internal quotation omitted). When a complaint does not identify "in which capacity the defendants are sued, the course of proceedings typically indicates the nature of the liability sought to be imposed." *Jackson,* 16 F.3d at 1575.

 Here, in examining the course of proceedings, the court concludes for three reasons that an individual-capacity lawsuit against each Defendant is appropriate. First, Plaintiff seeks punitive damages from Franklin, Bowers, Rogers and Estes. (2nd Am.Compl. at 3, 4, 5.) In § 1983 actions, punitive damages are only available from government officials when sued in their individual capacities. *See City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 268–70, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981); *see generally Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (State officials cannot be sued in their official capacities for damages.). Because Plaintiff may not obtain punitive damages from Defendants in their official capacities, the logical inference is that Plaintiff seeks punitive damages from Defendants in their individual capacities. Second, in a prior pleading filed in this action, Plaintiff expressed his intent to sue each Defendant in his individual capacity. Based upon this pleading, the court finds that Defendants are on sufficient "notice" in advance of trial that Plaintiff's action concerns Defendants' "personal liability." *Colvin,* 62 F.3d at 1318. Thus, the court finds that no prejudice to Defendants will result by permitting an individual-capacity action against each Defendant. *See id.* Third, Defendants have asserted the affirmative defense of qualified immunity in this action. The court notes that raising and arguing the defense of qualified immunity is sufficient to create a presumption that a lawsuit is filed against Defendants in their individual capacities. *See Fitzgerald v. McDaniel,* 833 F.2d 1516 (11th Cir.1987). Therefore, based on the foregoing, the court concludes that Plaintiff brings his

§ 1983 lawsuit against Franklin, Bowers, Rogers and Estes in both their individual and official capacities.

### 2. Official Capacity Lawsuits

Defendants assert that Plaintiff's official-capacity claims against them are due to be dismissed based on the Eleventh Amendment to the United States Constitution and because state officials are not "persons" within the meaning of § 1983. (Mot.¶¶ 3–5.) Plaintiff has not contested these arguments and for good reason. (Resp. at 4–5.) For the reasons that follow, the court agrees with Defendants.

 First, the Eleventh Amendment unequivocally bars suits for money damages against a state by the citizens of that state, unless the state waives its Eleventh Amendment immunity or Congress abrogates said immunity. *See Carr v. City of Florence, Ala.,* 916 F.2d 1521, 1524 (11th Cir.1990). Congress has not abrogated Eleventh Amendment immunity in § 1983 cases, nor has the State of Alabama consented to suit. *Id.* at 1525. Moreover, Eleventh Amendment immunity extends to state officials sued in their official capacities when " 'the state is the real, substantial party in interest.' " *Id.* at 1524 (quoting *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 101, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)). Where an award of damages would be paid by the state, "the state is considered the real party in interest. . . ." *Id.* Under Alabama law, because sheriffs are deemed "executive officers of the state," lawsuits against sheriffs in their official capacities are, in essence, lawsuits against the state. *Id.* at 1525 (citing *Parker v. Amerson,* 519 So.2d 442, 443 (Ala.1987)). Thus, the Eleventh Amendment provides absolute immunity to sheriffs sued in their official capacities. (*Id.*) This immunity extends to deputy sheriffs because of their "traditional function under Alabama law as the Sheriff's alter ego." *Id.* at 1527. Therefore, based on the foregoing, the court finds that the Eleventh Amendment bars Plaintiff's

§ 1983 claims brought against Franklin, Bowers, Rogers and Estes in their official capacities.

■■■ Second, the court finds that Defendants, in their official capacities, cannot be held liable under the Eleventh Amendment because they are not "persons" within the meaning of § 1983.[8] As noted in *Carr,*

> States and their officials no longer need to rely exclusively on eleventh amendment immunity to avoid liability in their official capacities in section 1983 cases. In *Will v. Michigan Department of State Police,* [491] U.S. [58], 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the Supreme Court held that states and state officials are not "persons" subject to liability under 42 U.S.C. § 1983.

916 F.2d at 1525. Accordingly, based on the foregoing, the court finds that Counts 1 and 7 against Franklin, Bowers, Rogers and Estes in their official capacities are due to be dismissed.

### 3. Individual Capacity Lawsuits and Qualified Immunity

In their Motion, Defendants have raised the affirmative defense of qualified immunity. (Mot.¶ 7.) Plaintiff urges the court to deny Defendants this defense and to allow his § 1983 action to proceed against Franklin, Bowers, Rogers and Estes in their individual capacities. After discussing the general principles of law pertaining to qualified immunity, the court will address the contentions raised by Defendants and Plaintiff's opposing arguments.

■■■ Qualified immunity is an affirmative defense to a § 1983 action against a government official sued in his or her individual capacity. *See Wilson v. Strong,* 156 F.3d 1131, 1135 (11th Cir.1998); *see also Hill,* 40 F.3d at 1184 n. 16. Under the doctrine of qualified immunity, "govern-

ment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *see also Rich v. Dollar,* 841 F.2d 1558, 1563 (11th Cir.1988). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

■■■ The test for whether a governmental defendant is entitled to qualified immunity from liability in his or her individual capacity involves a two-step analysis. The first inquiry concerns "whether the defendant government official was performing a discretionary function." *Madiwale v. Savaiko,* 117 F.3d 1321, 1324 (11th Cir.1997). A government official acts within his or her discretionary authority if the challenged actions were (1) "undertaken pursuant to the performance of his [or her] duties" and (2) "within the scope of [his or her] authority." *Lenz v. Winburn,* 51 F.3d 1540, 1545 (11th Cir.1995) (quoting *Rich,* 841 F.2d at 1564). The determination that an officer was acting within his or her discretionary authority is a "low hurdle" to clear. *Godby v. Montgomery Co. Bd. of Educ.,* 996 F.Supp. 1390, 1400 (M.D.Ala.1998) (citing *Jordan v. Doe,* 38 F.3d 1559 (11th Cir.1994)). If a defendant satisfies this hurdle, the burden shifts to the plaintiff to demonstrate under the second prong that the official's actions " 'violated clearly established constitutional law' " or a federal statute. *Id.*

■■■ Under the second prong, the court must determine whether the applicable law was clearly established at the time of the

8. 42 U.S.C. § 1983 provides that

[e]very person who, under color of a statute ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction

thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

challenged action. This is determined by reference to decisions of the Supreme Court of the United States, the Court of Appeals for the Eleventh Circuit and, in this case, the Supreme Court of Alabama. *See D'Aguanno v. Gallagher*, 50 F.3d 877, 881 n. 6 (11th Cir.1995); *see also Courson v. McMillian*, 939 F.2d 1479, 1498 n. 32 (11th Cir.1991). The relevant inquiry is "fact specific," *Rodgers v. Horsley*, 39 F.3d 308, 311 (11th Cir.1994), and a plaintiff must point to a controlling case, decided before the events at issue, that establishes a constitutional violation on "materially similar" facts. *Lassiter v. Alabama A & M Univ., Bd. of Trustees*, 28 F.3d 1146, 1150 (11th Cir.1994); *see also Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (holding that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right").

■ "[T]his is not to say that an official action is protected by qualified immunity unless the very action in question has been previously held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Madiwale*, 117 F.3d at 1324 (quoting *Anderson*, 483 U.S. at 640, 107 S.Ct. 3034). Absent a controlling and factually on-point case, a plaintiff can overcome qualified immunity only when "the official's conduct lies so obviously at the very core" of what the constitutional provision forbids "that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw." *Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir.1997) (citing *United States v. Lanier*, 520 U.S. 259, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997)).

With the foregoing principles in mind, the court turns to Plaintiff's Second Amended Complaint to determine whether the § 1983 claims asserted therein can sur-

vive Defendants' Motion and the defense of qualified immunity. The court will address Plaintiff's claims against Franklin and Bowers separate from Plaintiff's claims against Rogers and Estes. The court does so because the standard for determining liability is different for Rogers and Estes, who are alleged participants in the alleged unconstitutional conduct, as compared to Franklin and Bowers, whom Plaintiff apparently seeks to hold accountable under a supervisory liability theory.

### a. Franklin and Bowers

Defendant argues that, as to Franklin and Bowers, Counts 1 and 7 are due to be dismissed for two separate, but related reasons. First, Defendants contend that Plaintiff fails to state a claim against them because Plaintiff has neither alleged that these two Defendants "directly participated in any alleged constitutional violation," nor has he alleged "any affirmative causal link between these Defendants and any other alleged constitutional deprivation." (Mot.¶ 6.) Second, Defendants contend that Franklin and Bowers are entitled to qualified immunity in their individual capacities. (*Id.* ¶ 7.) Plaintiff does not directly address Defendants' arguments, but only generally asserts that his Second Amended Complaint states "claims for which relief may be granted." (Resp. at 1.) For the following reasons, the court agrees with Defendants.

■ When a government official moves to dismiss a claim on the basis of qualified immunity, "the qualified immunity inquiry and the Rule 12(b)(6) standard become intertwined." *GJR Investments*, 132 F.3d at 1366; *Wooten v. Campbell*, 49 F.3d 696, 699 (11th Cir.1995). That is, a defendant can "defeat" a plaintiff's § 1983 claim if the complaint fails " 'to state a claim upon which relief can be granted.' " [9] *Id.* (citing

---

9. To state a claim under § 1983, Plaintiff must allege the following two elements with some factual detail: "(1) that [he] suffered a deprivation of 'rights, privileges or immunities secured by the Constitution and laws' of the United States, and (2) that a person 'act-

ing under color of law' caused the deprivation, either by an act or omission." *Wideman v. Shallowford Community Hosp., Inc.*, 826 F.2d 1030, 1032 (11th Cir.1987) (citation omitted).

FED.R.CIV.P. 12(b)(6)). Similarly, under the defense of qualified immunity, a defendant is "immune from liability" if the complaint "fails to state a violation of a 'clearly established ... constitutional right[ ] of which a reasonable person would have known.'" *Id.* (citing *Harlow*, 457 U.S. at 818, 102 S.Ct. 2727). As noted by the Supreme Court, "[a] necessary concomitant to the determination of whether the constitutional right or federal statutory right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *see also Wooten*, 49 F.3d at 699. Thus, "[i]f a plaintiff has not sufficiently alleged a violation of any constitutional right, it is axiomatic that the plaintiff likewise has failed to allege the violation of a 'clearly established' right." *GJR Investments*, 132 F.3d at 1367.

To state a claim in § 1983 actions where a defendant-supervisor was not present when the alleged constitutional violation occurred, as here, the standard to impose liability upon him or her is "extremely rigorous." *Braddy v. Florida Dept. of Labor and Employment Security*, 133 F.3d 797, 802 (11th Cir.1998). In *Braddy*, the Eleventh Circuit stated:

> Supervisory liability [under § 1983] occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervisory official and the alleged constitutional deprivation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he [she] fails to do so. The deprivations that constitute widespread abuse sufficient to notify the supervisory official must be obvious, flagrant, rampant, and of such continuous duration, rather than isolated occurrences.

*Id.* at 801 (citing *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir.1990)).

For the reasons to follow, the court finds that the type of "intertwined" analysis discussed in *GJR Investments* and *Wooten, supra*, applies here and that Counts 1 and 7 against Franklin and Bowers are due to be dismissed. It is undisputed that Franklin and Bowers, as sheriff and jailer, respectively, are supervisors. Thus, under the circumstances enumerated in *Braddy, supra*, they may be held accountable under § 1983 for the unconstitutional conduct of their subordinates.

However, the court finds that none of the *Braddy* circumstances are present in this case. Plaintiff has not alleged or argued that either Franklin or Bowers personally participated in the alleged constitutional violations or were even present at the jail on the day in question. Furthermore, nowhere in the Second Amended Complaint does Plaintiff set forth any facts linking Franklin or Bowers to the acts and omissions of which Plaintiff complains. Neither Franklin nor Bowers are mentioned in the portion of Plaintiff's Second Amended Complaint in which Plaintiff describes the unconstitutional acts that allegedly occurred on August 8, 1997. (2nd Am. Compl.¶ 3.) Likewise, the Second Amended Complaint is completely devoid of any allegations pertaining to how Franklin and Bowers contributed to or caused the alleged constitutional deprivations at issue. For example, there are no facts alleging that the Elmore County deputies had a history of engaging in similar unconstitutional acts in the past so as to place Franklin and Bowers on notice of the need to correct the violations at issue. *See Braddy*, 133 F.3d at 801. Consequently, there are no allegations in the Second Amended Complaint upon which the court can conclude that Franklin and Bowers violated Plaintiff's constitutional rights, as protected by the Fourth and/or Fourteenth amendments.

Thus, under Rule 12(b)(6), the court finds that Plaintiff has not alleged facts sufficient to state a Fourth Amendment or a Fourteenth Amendment claim against either Franklin or Bowers. Consequently,

in failing to allege the violation of a constitutional right, Plaintiff necessarily fails to allege the violation of a clearly established right. *See GJR Investments*, 132 F.3d at 1367. Hence, Franklin and Bowers are entitled to qualified immunity.[10] Hence, Counts 1 and 7 against Franklin and Bowers in their individual capacities are due to be dismissed.

### b. Rogers and Estes

The court now turns to the two-step inquiry for determining whether Rogers and Estes are entitled to qualified immunity. *See Rich*, 841 F.2d at 1563–64. For the reasons to follow, the court concludes as follows: (1) Rogers and Estes are entitled to qualified immunity on Plaintiff's § 1983 claims brought under the Fourth Amendment; and, (2) as to Plaintiff's § 1983 claims brought under the Fourteenth Amendment, Rogers and Estes are entitled to qualified immunity on Plaintiff's unlawful detention allegation, but not on Plaintiff's allegation that Rogers and Estes delayed medical treatment for Plaintiff.

### i. Scope of Discretionary Authority

As stated, the first prong of the qualified immunity analysis requires a showing that the government official was acting within the scope of his or her discretionary authority at the time of the alleged unconstitutional conduct. *See Jordan*, 38 F.3d at 1565. Plaintiff argues that Rogers and Estes are not entitled to qualified immunity because they "were acting clearly outside the line and scope" of their duties as deputy sheriffs. (Resp. at 2.) However, for the following reasons, the court finds that Plaintiff's argument must fail given the Eleventh Circuit's broad definition of "discretionary authority."

 In determining whether a defendant acted within the scope of his or her discretionary authority, the test is not whether the government official acted lawfully. Rather, the court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of the government official's discretionary duties. *See Sims v. Metropolitan Dade County*, 972 F.2d 1230, 1236 (11th Cir.1992). In *Griswold v. Alabama Dep't of Industrial Relations*, another court in this district cited the following examples revealing the "level of generality" employed by the Eleventh Circuit in ascertaining whether a government official acts within his or her discretionary authority:

> In *Rich*, the Eleventh Circuit asked whether an investigator acts within his job duties and authority when he submits a probable cause affidavit, not when he submits a probable cause affidavit without a reasonable basis, as the plaintiff alleged. 841 F.2d at 1562, 1564. In *Jordan*, the Eleventh Circuit asked whether federal marshals act within their job duties and authority by transporting detainees between facilities, not by transporting detainees to overcrowded, unsanitary facilities. 38 F.3d at 1564–66. In a case from this district, the court asked whether a police officer acts within his scope of authority and job duties by controlling an arrestee, not beating an arrestee. *Sweatt v. Bailey*, 876 F.Supp. 1571, 1576 (M.D.Ala.1995).

903 F.Supp. 1492, 1498 (M.D.Ala.1995).

 Based on the foregoing, the court must ask whether Rogers and Estes were, at the very least, acting within the scope of the outer limits of their discretionary authority in detaining Plaintiff and in making decisions regarding his medical needs. In other words, under the first step, the court does not examine the manner in which

---

**10.** As a final note, the court emphasizes that, where a defendant raises the defense of qualified immunity, a plaintiff cannot survive a motion to dismiss with conclusory allegations. In § 1983 individual-capacity actions, heightened pleading "is the law of this circuit." *GJR Investments*, 132 F.3d at 1368. Plaintiff's mere allegation that Franklin and Bowers, "jointly and severally, violated his civil rights" is conclusory and, thus, wholly insufficient to meet the heightened pleading standard. (2nd Am.Compl.¶ 6.) The § 1983 claims against Franklin and Bowers are precisely the type of vague claims that the court should "summarily" dismiss. *GJR Investments*, 132 F.3d at 1368.

Rogers and Estes performed their duties. Instead, the unconstitutional manner in which Rogers and Estes allegedly treated Plaintiff during his pretrial detention is "more properly considered in the second step of the test where the court examines the actual conduct of the officers to see if the specific situation is governed by clearly established law." *Sweatt*, 876 F.Supp. at 1576; *see also Maggio v. Sipple*, 211 F.3d 1346, 1351 n. 2 (11th Cir.2000).

Detaining prisoners in jail and obtaining medical treatment for prisoners are statutory duties of the sheriff. *See* ALA.CODE §§ 14–6–1, 14–6–19 (1975) [11]; *see also Lancaster*, 116 F.3d at 1431. A deputy sheriff, as the alter ego of the sheriff, performs the duties of the sheriff. *See Terry v. Cook*, 866 F.2d 373 (11th Cir.1989). Based on the foregoing, the court finds that any decisions by Rogers and Estes to keep Plaintiff incarcerated and to deny Plaintiff medical treatment were made during the performance of Rogers and Estes' duties as deputy sheriffs. The court, therefore, finds that, in performing these duties, Rogers and Estes were engaged in discretionary functions for purposes of the qualified immunity analysis. Thus, the court finds that deputies Rogers and Estes were "acting within the scope of [their] discretionary authority" when the alleged unconstitutional acts occurred. *Zeigler*, 716 F.2d at 849.

### ii. Clearly Established Law

#### (a) Fourth Amendment

██ For the following reasons, the court finds that Plaintiff has not alleged conduct that implicates the Fourth Amendment.[12] All of the actions about which Plaintiff complains occurred while Plaintiff was in custody at the Elmore County Jail. Namely, Plaintiff complains that, during his pretrial incarceration, he was beaten and delayed medical treatment. (2nd Am.Compl.¶ 3.) Because Plaintiff was a pretrial detainee, his allegations must be assessed within the context of the Due Process Clause of the Fourteenth Amendment, not the Fourth Amendment. *See Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1425 n. 6 (11th Cir.1997) ("A government official's treatment of a pretrial detainee is governed by the Due Process Clause of the Fourteenth Amendment."); *see Brooks v. George County, Mississippi*, 84 F.3d 157, 166–67 (5th Cir. 1996) (Where a pretrial detainee alleges that his continued incarceration is unlawful, the Fourth Amendment does not apply; rather, the pretrial detainee must seek recourse under the Due Process Clause of the Fourteenth Amendment.); *Harris v. Coweta County*, 21 F.3d 388, 393 & n. 6 (11th Cir.1994) (The Due Process Clause of the Fourteenth Amendment protects a pretrial detainee from a prison official's "deliberate indifference" to his or her "serious medical needs.").

Because Plaintiff's claims are not viable under the Fourth Amendment, the court finds that Plaintiff fails to state a claim against Rogers and Estes under the Fourth Amendment. Similarly, because

---

11. Section 14–6–1 of the Code of Alabama provides that "[t]he sheriff has the legal custody and charge of the jail in his county and all prisoners committed thereto, except in cases otherwise provided by law, and may appoint a jailer for whose acts he is civilly responsible." Section 14–6–19, in turn, provides as follows: Necessary clothing and bedding must be furnished by the sheriff or jailer, at the expense of the county, to those prisoners who are unable to provide them for themselves, and also necessary medicines and medical attention to those who are sick or injured, when they are unable to provide them for themselves.

12. The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. 4; *see also United States v. McBean*, 861 F.2d 1570, 1573 (11th Cir.1988) ("The Fourth Amendment to the Constitution prohibits, on its face, unreasonable searches and seizures[.]"). The Fourth Amendment is applicable to the states through the Fourteenth Amendment. *Michigan v. Summers*, 452 U.S. 692, 694 n. 2, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981).

the claims which Plaintiff attempts to bring under the Fourth Amendment—i.e., claims for unlawful detention and delay of medical care—are not cognizable under the Fourth Amendment, Rogers and Estes are entitled to qualified immunity on said claims. In other words, Plaintiff has failed to set forth a violation of clearly established law in regard to his Fourth Amendment claims, thus, entitling Rogers and Estes to dismissal of said claims pursuant to the doctrine of qualified immunity. *See Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) ("Unless the plaintiff's *allegations* state a claim of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery. . . ."); *see also Wright v. Whiddon*, 951 F.2d 297, 300 (11th Cir.1992). Accordingly, the court finds that Plaintiff's § 1983 claims brought under the Fourth Amendment against Rogers and Estes in their individual capacities are due to be dismissed.

(b) Fourteenth Amendment

 In Counts 1 and 7, Plaintiff also brings his unlawful detention and delay in medical treatment under the Fourteenth Amendment. (2nd Am.Compl.¶¶ 6, 19.) First, as to Plaintiff's allegation that

he was unlawfully detained on August 8, 1997, the court finds that the allegations in the Second Amended Complaint do not support such a claim. The Second Amended Complaint is devoid of any allegation that Plaintiff was illegally detained. For example, Plaintiff has not challenged as illegal his initial arrest leading to his detention, nor has he asserted that his continued detention was unlawful. *See Brooks*, 84 F.3d at 166–167. Plaintiff's Second Amended Complaint contains only a conclusory phrase that he was "unlawfully detain[ed]." (2nd Am.Compl.¶¶ 6, 9.) Because there is not a single fact asserted anywhere in Plaintiff's Second Amended Complaint that backs up Plaintiff's allegation, the court has no idea what the basis of Plaintiff's claim is. As Plaintiff has failed to allege his claim with "[s]ome factual detail," as required in this circuit, the court finds that Plaintiff has not stated a violation of a clearly established constitutional right. *GJR Investments*, 132 F.3d at 1367. Thus, Rogers and Estes are entitled to qualified immunity on Plaintiff's Fourteenth Amendment claim pertaining to an unlawful detention.[13] Accordingly, said claim is due to be dismissed.

Second, the court turns to Plaintiff's allegation that Rogers and Estes' two-hour

---

**13.** The court notes that the allegations in Plaintiff's Second Amended Complaint more closely resemble a Fourteenth Amendment Due Process claim pertaining to the use of excessive force during Plaintiff's detention. *See Cottrell v. Caldwell*, "[c]laims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause." 85 F.3d 1480, 1490 (11th Cir.1996); *see also Vineyard v. County of Murray, Georgia*, 990 F.2d 1207, 1211 (11th Cir.1993) ("[T]he law is well established that pretrial detainees may bring § 1983 actions to redress violations of their rights under the Due Process Clause of the Fourteenth Amendment, which 'protects a pretrial detainee from the use of excessive force that amounts to punishment.' ") (quoting *Graham v. Connor*, 490 U.S. 386, 395 n. 10, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). Namely, in his factual statement, Plaintiff asserts as follows: Estes "cam [sic] into the room and put handcuffs on me, grabbed me by the throat, and slammed me against the wall two times, removed the handcuffs, hit me

with his fist in the stomach, and told me if I said another word he would handcuff me to the grate in the middle of floor where you urinate." (2nd Am.Compl.¶ 3.) Moreover, in his Response, Plaintiff does not complain of an unlawful detention but, rather, argues that "[t]he assaults on the person of Plaintiff, including the injuries as a result of excessive tightening of the handcuffs placed on [ ] Plaintiff, are excessive force outside the color of law protection · afforded state actors." (Resp. at 3.)

However, Plaintiff has not pleaded a Fourteenth Amendment due process excessive force claim in his Second Amended Complaint. For instance, the words "excessive force" do not appear anywhere in the Second Amended Complaint. *See GJR Investments*, 132 F.3d at 1367. Moreover, Plaintiff does not specifically name Estes in any count, describe Estes' alleged action, or set forth that said alleged actions violate his right to be free from excessive force, as protected by the Fourteenth Amendment's Due Process Clause.

delay in providing Plaintiff with medical care for his heart condition on August 8, 1997 violated Plaintiff's Fourteenth Amendment rights. Namely, the court must determine whether Rogers and Estes' alleged conduct violated clearly established constitutional rights of which a reasonable person would have known or whether "the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw." *Smith,* 127 F.3d at 1419. Moreover, in ascertaining whether Rogers and Estes acted reasonably, the court must "consider not only the law established at the time of the relevant incident, but also 'the information possessed by the official at the time the conduct occurred.'" *Lancaster,* 116 F.3d at 1424–1425 (quoting *Suissa v. Fulton County,* 74 F.3d 266, 269 (11th Cir.1996)).

 By the time Plaintiff was incarcerated, it was clearly established that "a jail official violates a pre-trial detainee's Fourteenth Amendment right to due process if he acts with deliberate indifference to the serious medical needs of the detainee." [14] *Lancaster,* 116 F.3d at 1425. Moreover, short of a refusal, a government official's delay in obtaining medical treatment for a pretrial detainee's serious medical needs also can form the basis of a Fourteenth Amendment due process claim. *See Hill,* 40 F.3d at 1187. Specifically, as of 1997, it was clearly established that a "[d]elay in treatment of serious and painful injuries" suffered by a prisoner "ris[es] to the level of a constitutional claim." *Harris,* 21 F.3d at 393.

 A Fourteenth Amendment due process claim that a government official ignored or delayed medical treatment "has two components: whether evidence of a serious medical need exists; if so, whether the defendants' response to that need amounted to deliberate indifference." [15]

Therefore, the issue is whether the court may infer an excessive force claim in determining whether Plaintiff has sufficiently alleged a violation of a clearly established constitutional right. In *GJR Investments,* the Eleventh Circuit explicitly held that

> [a] district court may not infer claims other than those that plainly appear on the face of the complaint to defeat a defense of qualified immunity. To do so is to ignore both the heightened pleading standard for § 1983 claims that is the law of this circuit and the Supreme Court's call for a "firm application of the Federal Rules of Civil Procedure" in cases where qualified immunity is asserted.

132 F.3d at 1369 (quoting *Butz v. Economou,* 438 U.S. 478, 508, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978)). Therefore, based on the foregoing, the court may neither infer a Fourteenth Amendment Due Process excessive force claim nor construe Plaintiff's Fourth Amendment unlawful detention as a claim for excessive force under the Fourteenth Amendment's Due Process Clause.

**14.** The court notes that "[t]he eighth amendment ... applies only to confinement that occurs subsequent to and as a consequence of a person's lawful conviction of a crime," and that "[c]onditions of confinement imposed prior to conviction are limited ... by the due process clause of the fourteenth amendment." *Hamm v. DeKalb County,* 774 F.2d 1567, 1572 (11th Cir.1985) (citing *Bell v. Wolfish,* 441 U.S. 520, 520 & n. 16, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)). Nonetheless, the Eleventh Circuit has held that, "in regard to providing pretrial detainees with ... medical care the minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons." *Hamm,* 774 F.2d at 1574. Thus, in determining whether the law is clearly established, the court may look to factually similar cases decided under both the Eighth Amendment and the Fourteenth Amendment. *See Lancaster,* 116 F.3d at 1425 n. 6; *see also Harris v. Coweta County,* 21 F.3d 388, 393 n. 6 (11th Cir.1994).

**15.** The court notes that, under the Due Process Clause, the standard of culpability has both an objective and subjective component. *Cottrell,* 85 F.3d at 1491. The first component is objective. To meet the objective component, as explained below, "the plaintiff must show a deprivation that is, 'objectively, sufficiently serious,' which means that the defendants' actions resulted 'in the denial of the minimal civilized measure of life's necessities.'" *Id.* (quoting *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). The second component is subjective. That is, if the objective component is established, "an in custody mistreatment claim still fails unless the plaintiff establishes that the defendant had a 'sufficiently culpable state of mind.'" *Id.* A culpable state of mind

*Adams v. Poag,* 61 F.3d 1537, 1542 (11th Cir.1995). Under the first component, a "serious" medical need "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hill,* 40 F.3d at 1187. Stated another way, "[c]ases stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem." *Id.* Under the second component, an official acts with "deliberate indifference," where he or she "knows that an inmate is in serious need of medical care, but ... fails or refuses to obtain medical treatment for the inmate." *Id.* Moreover, in cases where a government official delays medical treatment, deliberate indifference can "be inferred from an unexplained delay in treating a known or obvious serious medical condition." *Harris,* 21 F.3d at 394.

■ Applying the foregoing principals of law, the fact-specific qualified immunity inquiry is as follows: [16] Whether on August 8, 1997, Rogers and Estes should have known that Plaintiff's medical condition was either life-threatening or urgent and would be significantly exacerbated by delaying medical treatment for two hours where Plaintiff complained that he "was having chest pains and shortness of breath," asked Rogers and Estes to call his doctor and continued to inform them that "his situation was getting worse." (2nd Am.Compl.¶ 3.) Assuming the allegations in Plaintiff's Second Amended Complaint are true, the court finds for the following two reasons that the answer to this inquiry is "yes." Therefore, Rogers and Estes are not entitled to qualified immunity, at least at this stage of the litigation.

First, neither Rogers nor Estes have disputed that a heart condition is a serious medical need. Indeed, prior binding case law established in 1972 that, where a government official's refusal to provide medical treatment for a prisoner's heart disease subjects that prisoner to a risk of serious bodily injury and possible death, the prisoner states a claim for relief under § 1983. *See Bilton v. Beto,* 470 F.2d 988 (5th Cir. 1972); *see also See Brown,* 894 F.2d at 1538 n. 4 [17] ("Evidence of recent traumatic injury ... has generally been sufficient to demonstrate a serious medical need."). Here, Plaintiff asserts that he was suffering from chest pains and shortness of breath and that, as a result of the delay in medical treatment, he "spent two days in intensive care" and "could have died." (2nd Am.Compl.¶ 3.) Based on these allegations, the court finds that Plaintiff's medical needs were sufficiently serious and that, based upon Plaintiff's vocal complaints, the seriousness should have been obvious to Rogers and Estes. *See Waldrop v. Evans,* 871 F.2d 1030, 1036 (11th Cir.1989) (holding that it is clearly established "that prison officials have an obligation to take action or to inform competent authorities once the officials have knowledge of a prisoner's need for medical or psychiatric care.").

Second, the issue is whether by delaying treatment for two hours Rogers and Estes were deliberately indifferent to Plaintiff's serious medical needs. For qualified im-

---

is one which evinces a "deliberate indifference" to the detainee's health or safety. *Id.* at 1491.

**16.** As stated, the qualified immunity inquiry is "fact-specific," and is dependent upon whether the law was clearly established on the day in question. *Harris,* 21 F.3d at 390.

**17.** In *Brown,* the Eleventh Circuit cited the following cases as examples of actions involv-

ing "recent traumatic injury": *Barfield v. Brierton,* 883 F.2d 923, 938 (11th Cir.1989) (beating and sexual assault); *Thomas v. Town of Davie,* 847 F.2d 771 (11th Cir.1988) (automobile accident); *H.C. by Hewett v. Jarrard,* 786 F.2d 1080, 1086, 1086–87 (11th Cir.1986) (soft-tissue shoulder injury); and *Aldridge v. Montgomery,* 753 F.2d 970, 972–73 (11th Cir. 1985) (one and a half inch bleeding cut under the eye). *Id.*

munity purposes, "the pre-existing law must give officials some sense of what amount of time constitutes actionable delay in order for the law to be [clearly] established." *Harris*, 21 F.3d at 393 (citing *Anderson*, 483 U.S. at 640, 107 S.Ct. 3034). Pre-existing case law establishes, for example, that a two-and-a-half hour delay in treatment for a bleeding cut under the eye was actionable, *see Aldridge*, 753 F.2d at 972, as well as a six-hour delay in rendering medical treatment for an inmate with a broken foot. *See Brown*, 894 F.2d at 1538. The court, however, has found no case with facts exactly like Plaintiff's allegations. Despite the absence of a replica case, the court finds for the reasons that follow that Rogers and Estes are not entitled to qualified immunity at this stage of the litigation.

A lack of case law with materially similar facts does not always mean that a government official is entitled to qualified immunity. In *McMillian v. Johnson*, the plaintiff contended that, by placing him on deathrow while he awaited trial, government officials violated his Fourteenth Amendment due process right to be free from punishment as a pretrial detainee. 88 F.3d 1554, 1564–65 (11th Cir.1996) (vacated and amended on other grounds, 101 F.3d 1363 (11th Cir.1996)). In denying the defendant-officials qualified immunity, the *McMillian* court reasoned as follows:

> We do not view the absence of a case factually similar to the extraordinary allegations in this case as an indication that the law was not clearly established that confining a pretrial detainee on death row to punish him is unconstitutional. [The Supreme Court's] prohibition on any pretrial punishment, defined to include conditions imposed with an intent to punish, should have made it obvious to all reasonable officials in [defendants'] place that holding [plaintiff] on death row to punish him before he

was tried violated [his] due process rights.

*McMillian*, 88 F.3d at 1565 (citing *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)). The court finds that, despite a factually similar case, given the "extraordinary" allegations set forth in Plaintiff's Second Amended Complaint, no reasonable official could conclude in light of the clearly established law that refusing, for no apparent reason, to provide medical treatment to a prisoner complaining of symptoms manifesting an imminent heart attack was constitutional.[18] *Id.*

Based on the specific facts in this case, the court finds it sufficient that, in 1997, it was clearly established "that deliberate indifference could be inferred from an unexplained delay in treating a known or obvious serious medical condition." *Harris*, 21 F.3d at 394. The Fourteenth Amendment's prohibition on delaying medical treatment for a prisoner's medical needs, as defined in *Harris* and the cases cited herein, should have made it obvious to all reasonable officials in Rogers and Estes' positions that refusing for two hours to provide Plaintiff with medical treatment would violate Plaintiff's Fourteenth Amendment rights. *see also Carswell v. Bay County*, 854 F.2d 454, 457 (11th Cir. 1988) (clearly establishing that a failure to respond to repeated warnings about a prisoner's health problems, and failure to ensure that the inmate gets medical attention in the face of such warnings, constitutes deliberate indifference). In so finding, the court emphasizes that it has thought "long and hard" about its ruling. *Lassiter*, 28 F.3d at 1149 ("Because qualified immunity shields government actors in all but exceptional cases, courts should think long and hard before stripping defendants of immunity."). However, given the parameters of the law in 1997 as cited above, the court finds it inconceivable that Rogers and

---

**18.** For another example of a case that found the "clearly established" requirement satisfied and denied qualified immunity without citing a previous case with similar facts, *see Powell v. M.C. Lennon*, 914 F.2d 1459, 1464 (11th Cir.1990) (holding that a failure to remove a prisoner from an area after learning the area was contaminated with asbestos constituted deliberate indifference).

Estes could have reasonably believed their conduct was lawful under clearly established law.

Here, as alleged in Plaintiff's Second Amended Complaint, Rogers and Estes ignored for two hours Plaintiff's pleas for a doctor. Treating the allegations in the Second Amended Complaint as true, there was no justified reason for the delay. Indeed, the facts in the Second Amended Complaint point only to a conclusion that Rogers and Estes acted with an unlawful subjective intent in delaying medical treatment for Plaintiff. This unlawful subjective intent is manifested through Plaintiff's allegations regarding Defendants' response to Plaintiff's requests for medical attention. Namely, the court is referring to the "diagnosis" rendered by "Dr. Feelgood" that Plaintiff simply needed another beer, not a doctor.

In sum, if Plaintiff's allegations are true, the court finds that Rogers and Estes violated Plaintiff's clearly established constitutional rights. Therefore, they are not entitled to dismissal of these claims on qualified immunity grounds.[19]

### B. State–Law Causes of Action

■ In Counts 3–6, Plaintiff brings state-law causes of action against Franklin, Bowers, Rogers and Estes for assault and battery, negligence, intentional infliction of emotional distress, and outrage. (2nd Am. Compl.¶¶ 11, 13, 15, 17.) Plaintiff brings his claims against these Defendants in both their individual and official capacities. Defendants assert that Franklin, as the sheriff, and Bowers, Rogers and Estes, as deputy sheriffs, are absolutely immune from suit pursuant to § 14 of the Alabama Constitution of 1901. (Mot.¶ 8.) Thus, Defendants argue that Plaintiff's four state-law claims against them are due to be dismissed. For the following reasons, the court agrees.

In *Tinney v. Shores,* the Eleventh Circuit held that under § 14 of the Constitution of Alabama, "sheriffs and deputy sheriffs, in their official capacities and individually, are absolutely immune from suit when the action is, in effect, one against the state." 77 F.3d 378, 383 (11th Cir.1996) (citing *Phillips v. Thomas,* 555 So.2d 81, 83 (Ala.1989)). The only exception to § 14 immunity, the Eleventh Circuit noted, involves "actions brought to enjoin the sheriff's conduct."[20] *Id.* (citing *Alexander v. Hatfield,* 652 So.2d 1142, 1143 (Ala.1994)).

Here, like in *Tinney,* the relief sought by Plaintiff in alleging state-law claims against Defendants is monetary, not injunctive. (2nd Am.Compl. at 3, 5.) Therefore, under the holding in *Tinney,* the

19. The court notes that its ruling denying qualified immunity to Rogers and Estes merely means that Plaintiff may proceed with this claim at this stage of the proceedings. It may be that different facts emerge through discovery and that the evidence at the summary judgment stage will dictate a contrary result. Thus, if evidence exists outside the facts alleged in Plaintiff's Second Amended Complaint which Rogers and Estes believe would entitle them to qualified immunity, they may file a fully-briefed motion for summary judgment at the appropriate time.

20. The court notes that, in *McMillian v. Johnson,* the Eleventh Circuit recognized that "[s]ome of the language in *Tinney* is confusing." 101 F.3d 1363, 1365 (11th Cir.1996). Specifically, the Eleventh Circuit cited the following language in *Tinney* as "confusing" the [Tinney] court says that "[u]nder Alabama law, sheriffs and deputy sheriffs, in their official capacities and individually, are absolutely immune from suit when the action is, in effect, one against the state." *Id.* at 383. The claim under consideration in *Tinney* was against the sheriff and deputy sheriff in their individual capacities. However, no consideration was given to whether the action was, in effect, one against the state. Federal law controls a determination relative to whether a state is the real party-in-interest to the action, and under federal law the claim in *Tinney* was not one against the state.

*McMillian,* 101 F.3d at 1364. However, despite the "confusing language" in *Tinney,* the *McMillian* court established that *Tinney* was the law in this circuit and it was "bound" to follow its holding. *Id.* at 1365; *see also Williams v. Goldsmith,* 4 F.Supp.2d 1112, 1124–25 (M.D.Ala.1998).

court finds that Defendants are entitled to sovereign immunity on Plaintiff's state-law claims. Accordingly, the court finds that Counts 3–6 are due to be dismissed.

## V. CONCLUSION

In sum, Plaintiff may proceed under Counts 1 and 7 of his Second Amended Complaint against Rogers and Estes in their individual capacities on his § 1983 Fourteenth Amendment claim based on Rogers and Estes alleged two-hour delay in providing Plaintiff with medical treatment for his heart condition. Plaintiff has pleaded this claim with the "factual detail" required under *Oladeinde,* 963 F.2d at 1485, and his allegations, if true, would overcome the defense of qualified immunity. However, all of Plaintiff's remaining claims against Rogers and Estes, as well as all claims against Franklin and Bowers, are due to be dismissed.

## VI. ORDER

Accordingly, it is CONSIDERED and ORDERED · that Defendants' Motion To Dismiss Plaintiff's Second Amended Complaint be and the same is hereby GRANTED in part and DENIED in part as follows:

(1) Defendants' Motion To Dismiss Counts 1, 3, 4, 5, 6 and 7 of Plaintiff's Second Amended Complaint against Franklin and Bowers be and the same is hereby GRANTED and said claims be and the same are hereby DISMISSED WITH PREJUDICE. There being no remaining claims against Franklin and Bowers, it is CONSIDERED and ORDERED that Franklin and Bowers be and the same are hereby DISMISSED as Defendants in this action.

(2) Defendants' Motion To Dismiss Counts 1 and 7 of Plaintiff's Second Amended Complaint against Rogers and Estes in their official capacities be and the same is hereby GRANTED and said claims be and the same are hereby DISMISSED WITH PREJUDICE.

(3) Defendants' Motion To Dismiss Counts 1 and 7 of Plaintiff's Second Amended Complaint against Rogers and Estes in their individual capacities be and the same is hereby GRANTED as to Plaintiff's Fourth Amendment allegations, and said claims be and the same are hereby DISMISSED WITH PREJUDICE.

(4) Defendants' Motion To Dismiss Counts 1 and 7 of Plaintiff's Second Amended Complaint against Rogers and Estes in their individual capacities be and the same is hereby GRANTED as to Plaintiff's Fourteenth Amendment unlawful detention claim, and said claims be and the same are hereby DISMISSED WITH PREJUDICE.

(5) Defendants' Motion To Dismiss Counts 1 and 7 of Plaintiff's Second Amended Complaint against Rogers and Estes in their individual capacities be and the same is hereby DENIED as to Plaintiff's Fourteenth Amendment claim alleging a delay in medical treatment.

(6) Defendants' Motion To Dismiss Counts 3, 4, 5 and 6 of Plaintiff's Second Amended Complaint against Rogers and Estes be and the same is hereby GRANTED, and said claims be and the same are hereby DISMISSED WITH PREJUDICE.

A Uniform Scheduling Order is being entered contemporaneously herewith.